■ In the Matter of MARION BROWN, Petitioner, v PHILIP L. TOIA, as Commissioner of the New York State Department of Social Services, et al., Respondents.—Determination unanimously annulled, with costs, and petition granted in accordance with the following memorandum: In this article 78 proceeding petitioner seeks to annul a decision of respondent Commissioner of the New York State Department of Social Services (State commissioner) affirming a determination of respondent Commissioner of Onondaga County Department of Social Services (county department), which terminated her Medicaid benefits. Petitioner contends: that the transfer of her exempt homestead to her children, (which they sold for $24,000), while she was receiving Medicaid did not render her ineligible for such benefits; that respondents by accepting payment in restitution for all Medicaid benefits paid to petitioner from March, 1974 through August 1, 1975 waived any claim that she possessed and willfully failed to disclose nonexempt resources at the time of her application for assistance; and that no evidence supports the State commissioner's finding that she had resources available to pay her medical expenses on the date of the county department's determination to discontinue her assistance. She asks that her Medicaid benefits be reinstated retroactively to the date of discontinuance. A statutory fair hearing was held. It indicates that petitioner, 75 years old, applied to the county for medical assistance on April 4, 1974 and began receiving assistance on May 10, 1974. At that time she owned and lived in her house. By deed dated October 2, 1974 she conveyed the house to her son and daughter, without consideration. She continued to live in the house until February 25, 1975 when she was confined to a hospital and then transferred to a nursing home where she is now residing. The hearing also revealed that petitioner had undisclosed bank accounts totaling $8,881. One of these accounts was entitled "Marion Brown [petitioner] in trust for Marion Brush" (daughter) and the other account was entitled "Marion Brown in trust for Ernest Brown", (son). On April 24, 1974 the daughter closed out both accounts and deposited the money in an account entitled "Marion Brush in trust for Marion Brown". Petitioner's application did not disclose these accounts. The county department determined that although the house was an exempt homestead while petitioner owned it, upon transfer it became a resource whose fair market value should have been looked to for her maintenance. Although the State commissioner took the same position in his determination, he now concedes that in light of *Matter of Mondello v D'Elia* (39 NY2d 978, revg 49 AD2d 582) and our decision in *Matter of Case v Berger* (56 AD2d 714), the transfer of the homestead did not render petitioner ineligible for medical assistance. Although the county department does not make a similar concession, we find that *Mondello* is determinative of this issue. Both departments urge that the bank account was a resource available to pay petitioner's medical expenses and justified cutting off her benefits. The daughter testified that she transferred the money into the one account in accordance with her mother's wishes. She stated that all of the withdrawals from the account had been for petitioner's expenses. Regardless of the use made of the fund, it is uncontradicted that when the county department made its determination on January 29, 1976, the balance in the account was $679.72. This amount is well below petitioner's $1,850 statutory exemption and therefore is not required to be applied toward her medical expenses. In his determination the commissioner found that the daughter's testimony as

to the spending of the bank account funds was "not credible". This finding contains an ambiguity. If the commissioner found that the money was spent, as he must from the present balance in the account, then it is irrelevant whether petitioner was the beneficiary of the expenditures. The statutory eligibility criterion is whether petitioner is "a person who requires" medical assistance—i.e., whether she is currently in need (Social Services Law, § 366, subd 1). If the commissioner found that the contents of the bank account were not spent and are still available, then his finding would appear to be wholly conjectural and unsupported by any record evidence. When the county department learned of the bank account it demanded reimbursement of the total amount of medical benefits paid petitioner from March, 1974 to August 1, 1975. This sum, $2,760.60, was paid by petitioner, as shown on the bank account book by a withdrawal of that amount on January 12, 1976. Petitioner argues that acceptance of full restitution constituted a waiver of any right which respondents might have had to assert nondisclosure of the bank accounts as grounds for discontinuance. We agree. Restitution having been made, respondents cannot rely on their recoupment powers (Social Services Law, § 106-b) to justify discontinuance. Although it is recognized that public assistance may be discontinued for nonco-operation in furnishing needed information to determine eligibility (*Crespo v Dumpson*, 49 AD2d 873), the rule does not appear to fit the instant case, for it does not appear that respondents made any further demand for information which was not met, nor was the petitioner guilty of continuing nonco-operation. Thus the discontinuance, insofar as it rests on nondisclosure, can only be explained as a penalty for past fraudulent conduct. The county department has no power to impose such a penalty. As was noted in *Matter of Mondello v D'Elia* (39 NY2d 978, 980, *supra*), the department possesses no plenary legislative power (cf. *Matter of Hudson v Sipprell*, 76 Misc 2d 684). Having determined that petitioner is entitled to medical assistance, we turn to the question of retroactive reimbursement. 18 NYCRR 352.31 [f] provides that "A retroactive payment to a person whose application for assistance was erroneously denied or whose grant was erroneously discontinued shall be made for a period not in excess of two months preceding the month in which the error is discovered." Retroactive reimbursement should be determined in the light of all the special circumstances in each case and should be made in the interest of justice. In the record before us the retroactive reimbursement should be limited to a two-month period. (Article 78 proceeding transferred by order of Onondaga Supreme Court.) Present—Moule, J. P., Cardamone, Dillon, Denman and Goldman, JJ.